**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

AMERICA FIRST LEGAL FOUNDATION,
611 Pennsylvania Avenue SE #231
Washington, DC 20003

*Plaintiff,*

v.

FEDERAL ELECTION COMMISSION,
1050 First Street NE
Washington, DC 20463

*Defendant.*

Civil Action No.: 24-517

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**I. INTRODUCTION**

1. On April 20, 2023, the House Judiciary Committee revealed that the letter from 51 former intelligence officials ("Letter of 51"), alleging that "the arrival on the US political scene of emails purportedly belonging to Vice President Biden's son Hunter, much of it related to his time serving on the Board of the Ukrainian gas company Burisma, has all the classic earmarks of a Russian information operation," was the product of the Biden campaign according to testimony from former Deputy Director of the Central Intelligence Agency Michael Morell, who signed the Letter of 51. Letter from Jim Jordan, Chairman, H. Comm. on the Judiciary, and Michael R. Turner, Chairman, Permanent Select Comm. on Intel., to the Hon. Antony Blinken, Sec'y, U.S. Dep't of State (Apr. 20, 2023), https://bit.ly/3UGKsEs (citing Jim Clapper

et al., Public Statement on the Hunter Biden Emails (Oct. 19, 2020) (*available at* https://bit.ly/3SZDKrN)).

2. Nearly four out of five Americans, or 79 percent, believe that had there been "truthful" coverage of the Hunter Biden laptop, it would have changed the outcome of the 2020 presidential election. *See* Bruce Golding, *79% Say 'Truthful' Coverage of Hunter Biden's Laptop Would Have Changed 2020 Election,* N.Y. POST (Aug. 26, 2022), https://bit.ly/3Vm6SaC; *see also* Jerry Dunleavy, *Barr says Hunter Biden Russian Disinformation Claims 'Probably Affected' Election Outcome*, WASH. EXAMINER (Mar. 22, 2022), https://bit.ly/3jqg0Ol.

3. Biden for President, Biden Victory Fund, DNC Services Corp/Democratic National Committee, and Biden Action Fund (collectively, the "Respondents") failed to report the direct contributions, indirect contributions, and coordinated communications made in connection with the "Letter of 51" to the Federal Election Commission ("Commission").

4. On October 23, 2023, the Plaintiff, America First Legal Foundation, filed with the Commission an administrative complaint (MUR 8182) showing that the Respondents received and failed to report direct contributions, indirect contributions, and coordinated communications in violation of 52 U.S.C. § 30104. Attach. 1 ("Admin. Compl.").

5. America First Legal's administrative complaint has been pending for over 120 days, yet the Commission has taken no action.

6. The Federal Election Campaign Act, 52 U.S.C. §30101 *et seq*., provides administrative complainants with a right of action against the Commission if the Commission fails to act on a complaint within 120 days, at which point, "the court may declare that … the failure to act is contrary to law and may direct the Commission to conform with such declaration within 30 days, failing which the complainant may bring, in the name of such complainant, a civil action to remedy the violation in the original complaint." 52 U.S.C. § 30109(a)(8)(C).

7. America First Legal brings this action under 52 U.S.C. § 30109(a)(8)(C) of the Federal Election Campaign Act seeking injunctive and declaratory relief to compel the Commission to act on America First Legal's administrative complaint regarding the Respondents failure to file reports disclosing its contributors, contributions, and coordinated communications in violation of 52 U.S.C. § 30104.

## II. THE PARTIES

8. The Plaintiff, America First Legal Foundation, is a national, nonprofit organization working to promote the rule of law in the United States, prevent executive overreach, and ensure due process and equal protection for all Americans, all to promote public knowledge and understanding of the law and individual rights guaranteed under the Constitution and laws of the United States. America First Legal uses a combination of research, litigation, and advocacy to advance its mission.

9. In furtherance of its mission, America First Legal seeks to expose the unethical and illegal conduct of government officials. America First Legal does this by gathering information related to coordinated election interference activities by

government agencies and officials and making such information available to the public through its website, press releases, and social media. Publicizing campaign finance violators and filing complaints with the Commission serve America First Legal's mission by keeping the public informed, thereby deterring future violations of campaign finance law. America First Legal's organizational activities and financial resources are dependent upon its ability to obtain relevant information and disclose it to the public. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). Therefore, America First Legal is harmed when a regulated person or entity either fails to disclose or provides false information in reports required by the Federal Election Campaign Act.

10. America First Legal relies on the Commission to properly administer the Act's reporting requirements because these reports are the only source of information that America First Legal can use to determine if a regulated person complies with the Act. The proper administration of the Act includes ensuring that all disclosure reports are correctly and timely filed with the Commission.

11. Federal enforcement is necessary when federal campaign finance and support turn from a private civic act to election interference and public corruption. *McCormick v. United States,* 500 U.S. 257 (1991); *Evans v. United States,* 504 U.S. 255 (1992). Therefore, America First Legal's programmatic activity is hindered when the Commission fails to administer the Act properly. *See Campaign Legal Ctr. v. FEC*, 466 F. Supp. 3d 141, 146 (D.D.C. 2022) (*citing FEC v. Akins*, 524 U.S. 11, 14 (1998)).

12. By failing to act on America First Legal's administrative complaint, the Commission has harmed America First Legal by allowing a campaign for President of the United States to benefit from undisclosed contributions and coordinated in-kind expenditures in furtherance of using a campaign platform misrepresented as an unbiased and non-political report contrary to 52 U.S.C. §§ 30104(b)(2)(A) and (b)(3)(A).

13. The Defendant, the Federal Election Commission, is an independent federal agency charged with the administration and civil enforcement of the Federal Election Campaign Act. 52 U.S.C. § 30106.

## III. JURISDICTION AND VENUE

14. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties under 52 U.S.C. § 30109(a)(8)(A) and 28 U.S.C. §§ 1331, 2201.

15. Venue is proper under 52 U.S.C. § 30109(a)(8)(A) and 28 U.S.C. § 1391.

16. Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202.

17. This Court also has jurisdiction over this action under 28 U.S.C. § 1331.

## IV. BACKGROUND

18. On October 15, 2020, *The Hill* linked Hunter Biden's laptop to an alleged Russian influence campaign to pass misinformation to President Trump, through his personal lawyer Rudy Giuliani. Citing an anonymous source, *The Hill* reported, "Several senior administration officials, including Attorney General William Barr,

FBI Director Christopher Wray and White House counsel Pat Cipollone 'all had common understanding' that Russia was targeting the president's personal lawyer." Justine Coleman, *Intelligence Officials Warned Trump That Giuliani Was Target of Russian Influence Campaign*, THE HILL (Oct. 15, 2020), https://bit.ly/3WzHaQV.

19. On October 15, 2020, *NBC* reported that "Federal investigators are examining whether emails allegedly describing activities by Joe Biden and his son Hunter and found on a laptop at a Delaware repair shop are linked to a foreign intelligence operation" based on claims made by "two people familiar with the matter"; and that the evidence of Biden corruption was "greeted with widespread skepticism." Ken Dilanian, *Feds Examining Whether Alleged Hunter Biden Emails Are Linked to a Foreign Intel Operation*, NBC NEWS (Oct. 15, 2020), https://bit.ly/3BOh5FZ.

20. On October 16, 2020, *CNN* reported, under six bylines, that "US authorities are investigating whether the published emails that purport to detail the business dealings of Joe Biden's son in Ukraine and China are connected to an ongoing Russian disinformation effort targeting the former vice president's campaign, a US official and a congressional source briefed on the matter said." Marshall Cohen et al., *US Authorities Investigating if Recently Published Emails Are Tied to Russian Disinformation Effort Targeting Biden*, CNN (Oct. 16, 2020), https://bit.ly/42DP5Rz. It declared that "Giuliani has openly coordinated with a known Russian agent to promote disinformation about the Bidens" and that "[t]he FBI is leading the investigation." *Id.*

21. Also, on October 16, 2020, House Intelligence Committee Chairman Adam Schiff claimed that Hunter Biden's laptop was a Russian disinformation campaign. Adam Shaw, *Adam Schiff Claims Hunter Biden Email Stories Come 'From the Kremlin,'* FOX NEWS (Oct. 17, 2020), https://bit.ly/3V5Lczg.

22. "*We know that this whole smear on Joe Biden comes from the Kremlin*," Schiff said, "*That's been clear for well over a year now that they've been pushing this false narrative about the vice president and his son . . . . Clearly, the origins of this whole smear are from the Kremlin, and the President is only too happy to have Kremlin help and try to amplify it*." The Situation Room (@CNNSitRoom), TWITTER (Oct. 16, 2020, 7:24 PM), bit.ly/3NxGEQB (emphasis added).

23. Also, on October 16, 2020, a Twitter executive noted "well-timed briefings from Gov't sources…which would support an assessment that [the laptop is] neither whistleblower nor dissident content." *See* Michael Shellenberger (@shellenberger), TWITTER (Dec. 19, 2022, 1:25 PM), https://bit.ly/3uA4zJG.

24. On October 19, 2020, *Politico* released a contemporaneously dated letter from 51 former intelligence officials, including Trump critics John Brennan, Jim Clapper, and Michael Hayden, alleging that "the arrival on the US political scene of emails purportedly belonging to Vice President Biden's son Hunter, much of it related to his time serving on the Board of the Ukrainian gas company Burisma, has all the classic earmarks of a Russian information operation." *See* Natasha Bertrand, *Hunter Biden Story Is Russian Disinfo, Dozens of Former Intel Officials Say*, POLITICO (Oct. 19, 2020), https://bit.ly/49f8KtH (citing Jim Clapper et al., *supra*).

25. As reported, the 51 former intelligence officials further alleged that "[f]or the Russians at this point, with Trump down in the polls, there is [an] incentive for Moscow to pull out the stops to do anything possible to help Trump win and/or to weaken Biden should he win. A 'laptop op' fits the bill, as the publication of the emails [is] clearly designed to discredit Biden." Jim Clapper et al., *supra*.

26. The officials concluded that "[o]ur view that the Russians are involved in the Hunter Biden email issue" was shared by "*Executive Branch departments and agencies [and] It is high time that Russia stops interfering in our democracy*." *Id.* (emphasis in original).

27. Former Intelligence Official Jim Baker insisted in an internal email that the Hunter Biden laptop evidence was faked and/or hacked. Michael Shellenberger (@shellenberger), TWITTER (Dec. 19, 2022, 1:10 PM), https://bit.ly/3I0e4ov; Michael Shellenberger (@shellenberger), TWITTER (Dec. 19, 2022, 1:20 PM), https://bit.ly/3wgcoVA. Baker reportedly reached out to Matthew Perry in the FBI's Office of General Counsel to coordinate a response. *Id.*

28. Michael Morell testified before the House Judiciary and Intelligence Committees that, on or around October 17, 2020—which was just days before the "Public Statement on the Hunter Biden Emails" was penned—Antony Blinken reached out to him to discuss the Hunter Biden laptop story. *See* Admin. Compl. Ex. 1 at 2; Admin. Compl. Ex. 5; Admin. Compl. Ex. 6.

29. Morell further testified that the Biden campaign "helped to strategize about the public release of the statement." Admin. Compl. Ex. 5 at 3.

30. Morell told Blinken that he was not familiar with the reporting. Blinken emailed Morell a *USA Today* article alleging the FBI was investigating whether it was Russian disinformation. At the bottom of the email was the signature block of Andrew Bates, then-director of rapid response for the Biden campaign. Admin. Compl. Ex. 1 at 2; Admin. Compl. Ex. 5 at 3.

31. Morell began drafting the "Letter of 51," which he testified would not have happened but for Blinken's communication. Admin. Compl. Ex. 1 at 2–3; Admin. Compl. Ex. 5 at 2.

32. During the October 22 presidential debate, then-Vice President Biden used the "Letter of 51" to rebut President Trump's criticisms of the Biden Family's foreign entanglements. Admin. Compl. Ex. 1 at 53–59; Admin. Compl. Ex. 5 at 3.

33. Biden campaign chairman Steve Ricchetti called Morell to thank him for the statement. Admin. Compl. Ex. 1 at 58–59; Admin. Compl. Ex. 5 at 3.

34. Also, the Biden campaign coordinated the dissemination of the "Letter of 51" to the media. Admin. Compl. Ex. 1 at 36–52; Admin. Compl. Ex. 5 at 3–4.

35. Morell tasked Nick Shapiro, his former Deputy Chief of Staff and Senior Advisor at the CIA, with placing the statement in major publications. Admin. Compl. Ex. 1 at 36–44; Admin. Compl. Ex. 5 at 3.

36. Specifically, Morell apprised Shapiro that "[b]etween us, the campaign would like" a specific reporter with the *Washington Post* to run the statement first. Admin. Compl. Ex. 1 at 3, 37.

37. Shapiro crafted an email for three separate media outlets and sent the content of the email to the Biden campaign's Director of Rapid Response, Andrew Bates, stating, "This is what I gave them." Admin. Compl. Ex. 1 at 3, 41.

38. *Politico* released the "Letter of 51" with a story headlined: "Hunter Biden story is Russian disinfo, dozens of former intel officials say." Natasha Bertrand, *supra*.

39. The Commission's records show that Leon Panetta donated to the Biden Victory Fund and Biden for President on June 29, 2020, and that James Clapper donated to the Biden Victory Fund and Biden for President on October 4, 2020. Admin. Compl. Ex. 3; Admin. Compl. Ex. 4.

40. Contemporaneous emails show the organizers' intent in drafting and releasing the statement: "[W]e think Trump will attack Biden on the issue at this week's debate and we want to offer perspectives on this from Russia watchers and other seasoned experts," and "we want to give the [Vice President] a talking point to use in response." Admin. Compl. Ex. 1 at 2.

41. Because Morrell, Brennan, Clapper, and the other signatories were supposedly "nonpartisan" national security and intelligence experts, their public statement was a campaign contribution of substantial value to the Respondents, who solicited the "Letter of 51" from them for the express purpose of influencing the 2020 Presidential election. Yet, the Respondents failed to report the contribution and to identify the individuals who made it. Admin. Compl. ¶¶ 11–40.

42. While *Politico* typically charges fees for advertising done on behalf of political campaigns, the Respondents caused *Politico* to publish the "Letter of 51" — which substantially influenced the outcome of the election. Yet, the Respondents failed to report the coordinated communication. Admin. Compl. ¶¶ 41–49; Admin. Compl. Ex. 8; Admin. Compl. Ex. 9.

## V. ADMINISTRATIVE PROCEEDINGS

43. On October 23, 2023, America First Legal filed an administrative complaint with the Commission seeking enforcement of the Federal Election Campaign Act's reporting requirements, 52 U.S.C. § 30104.

44. On October 30, 2023, the Commission sent America First Legal a letter acknowledging receipt of the administrative complaint and designating it MUR 8182.

45. To date, the Commission has taken no action on the complaint, which has been pending for over 120 days.

## VI. CAUSE OF ACTION

### FECA, 52 U.S.C. § 30109(8)(A)

46. The Plaintiff repeats paragraphs 1–45.

47. The Defendant's failure to act on the Plaintiff's administrative complaint is contrary to law. *See* 52 U.S.C. § 30109(8)(A).

## RELIEF REQUESTED

WHEREFORE, America First Legal requests that this Court:

A. Declare that the Commission's failure to act on the Plaintiff's administrative complaint is contrary to law under 52 U.S.C. § 30109(8)(A);

B. Order the FEC to conform with this declaration within 30 days pursuant to 52 U.S.C. § 30109(8)(C);

C. Award Plaintiff its costs and reasonable attorneys' fees incurred in this action; and

D. Grant such other relief the Court may deem just and proper.

February 25, 2024

Respectfully submitted,

/s/ *Michael Ding*

Reed D. Rubinstein (D.C. Bar No. 400153)
Daniel Epstein (D.C. Bar No. 1009132)
Juli Haller (D.C. Bar No. 466921)
Michael Ding (D.C. Bar No. 1027252)
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Avenue SE #231
Washington, DC 20003
(202) 964-3721
Reed.Rubinstein@aflegal.org
Daniel.Epstein@aflegal.org
Juli.Haller@aflegal.org
Michael.Ding@aflegal.org